By the Court:

Barbour, C.J.
There can be no doubt that the referee’s legal conclusion, that the defendants were entitled to recover the sum awarded to them in the report, was correct, if the purchases and sales, found by the referee to have been made by the defendants, were really made “ by the direction and authority or the subsequent approval of the plaintiff,” as he has found the fact to be. The only question for the court to determine upon this appeal, therefore, is, whether the testimony given upon the trial was sufficient to justify that finding of fact touching the authority conferred upon the defendants by the plaintiff, or his ratification of their acts.
The evidence upon the subject is contained, substantially, in the testimony of L. W. Badger, one of the defendants, on the one side, and that of the plaintiff himself upon the other. Mr. Badger, after stating in detail several transactions in stocks by his firm, as brokers for the plaintiff, and conversations with the latter, testified as follows: “ The account was rendered, and a check given for the difference. He made this remark once to me in the office, ‘ That he would have done better to have taken my advice.’ I told him Tes, the bears make most in the long run.’ *438 He said he did not know as he could be a bear. He said his business was such he could not come up every day, a/nd told me when I sa/w a chance to make anything, to do it. I told him 1 would do the best I could, and that I was as lAable to make a mistake as any one. The next transaction I made for him was to sell short one hundred shares of Horth-western preferred stock. * * He knew nothing of the transaction last named until after it was sold. He said he knew nothing about that stock. I told him I was in hopes to make something on it, and he told me whenever I thought it best to take it in; that is, to buy it and return it. * * The next time I saw Mr. Baker, soon after, I told him I had made him fifty dollars or more. He wanted to know if I was going to do anything more. I told him I would if he wished, and that I thought stocks were better sale than purchase. ‘Well] he says, ‘you may do as you think best about it.’ I told him perhaps if I made him some losses, then he would not feel so well about it. He said it would not be the first time, if he did lose / that he could not come up very often, and would rather I would go on ami do the best I could. * * About the 5 th or 6 th of June, I sold for him another hundred of Erie, at 72-J-, and bought it in at 75f. I told him about the transaction, and he asked me what I was going to do next, and if it would not do to buy something. I told him it would be Mariposa, if anything. He said I might do as I pleased, and that he would rather leave it with me. I bought him one hundred shares,” etc. Although the plaintiff admitted upon the trial that he authorized or sanctioned all of these purchases and sales, and they are, therefore, not in controversy, I have thus stated the testimony of Mr. Badger touching the transactions, for the purpose of exhibiting the mode in which the .parties dealt with each other. The Erie stock, next spoken of by the witness, was the very subject of the controversy so far as concerns this appeal. In regard to that Mr. Badger testified, in continuation of what is above set forth, “ The next transaction was in Erie. I told him perhaps he had better put the Erie out again; that is, sell short. He told me to do as 1 pleased, a/nd that he would rather lea/ue it with me; that he *439 couldn’t give it his attention every day. I sold a hundred shares for him at 75, about June 21st. I told him what I had done. * * The next time I saw him, he asked me if it was a good way to buy in a hundred shares of Erie. I told him it was, for the time being. I did buy a hundred Erie, at 91i. * * The market advanced rapidly, and, the next day or two, I met him. I told him there was quite an excitement in Erie, and he asked me what I had done. I told him I had bought a hundred shares at 91-1, and they were now bidding ninety-six for it, which would give him a profit of four or five hundred dollars. I ashed him if 1 had not better sell it, and he said, 1 By all means? I went and sold it at 96J. This was July 27. * * I told himbeforeheleft what I had sold it for, and he then went away, telling me to manage the best I could. He said, ‘ When you thinh best to buy, buy; andwhen to sell, sell, but don’t lose any money if you can help it? ”
The same witness further testified that after all the purchases of stocks had been made, and all except the hundred shares of Central sold, the defendants sent their account to the plaintiff, after which the witness asked him for money, and that when he told the plaintiff how the account stood, the latter “ took no exceptions to it, except to regret it, and promised to pay in a few days; ” and that as the witness went out at the door the plaintiff slapped him on the shoulder and said, “ Badger, you will not lose a cent of this money. You will have it, but you will have to wait a few days.”
Mr. Cook, who was in the employ of the defendants during the transactions, testified that he had heard conversations between the plaintiff and Badger, and that the former said “ he would leave it to Mr. Badger to act on his own judgment; ” that they were talking about stocks, but the witness did not know what stocks. Another witness (Mr. St. George) also stated that he had heard the plaintiff say to Badger, “ Do the best you can for me.”
That testimony, uncontradicted, would certainly be sufficient to establish not only the fact that the defendants were authorized *440 to buy and sell stocks for the plaintiff in their discretion, and without waiting for specific instructions, but that aftel’the stocks had all been sold except the Central, the plaintiff was informed, by a statement of the defendant’s account, of what they had done, and did not make any objection thereto, but, on the contrary, promised to pay the balance due them. It is true most of the material statements of the defendants’ witnesses, touching their dealings with the plaintiff, were denied by the latter upon the stand ; but the referee evidently came to the conclusion that the statement of Hr. Badger, corroborated as it was to some extent by two other witnesses, was true, as he well might.
The judgment should be affirmed, with costs.